```
FILED
CLERK, U.S. DISTRICT COURT

09/13/19

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY
```

1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   PUNEET V. KAKKAR (Cal. Bar No. 259816)
4  Assistant United States Attorney
   Deputy Chief, International Narcotics,
5    Money Laundering, and Racketeering Section
       1400 United States Courthouse
6      312 North Spring Street
       Los Angeles, California 90012
7      Telephone: (213) 894-5728
       Facsimile: (213) 894-0142
8      E-mail:   puneet.kakkar@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10

              UNITED STATES DISTRICT COURT

11

          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

UNITED STATES OF AMERICA,          No. CR 19 9CR00536 J FW

13

              Plaintiff,           PLEA AGREEMENT FOR DEFENDANT

14                                 VARDGES MARKOSYAN

              v.

15

VARDGES MARKOSYAN,

16   aka "Oncho,"
     aka "David Petrosov,"

17   aka "Giani Oncho,"
     aka "Laram Narman,"

18

              Defendant.

19

20

21       1.    This constitutes the plea agreement between VARDGES

22  MARKOSYAN, also known as ("aka") "Oncho," aka "David Petrosov," aka

23  "Giani Oncho," aka "Laram Narman" ("defendant") and the United States

24  Attorney's Office for the Central District of California (the "USAO")

25  in the above-captioned case.  This agreement is limited to the USAO

26  and cannot bind any other federal, state, local, or foreign

27  prosecuting, enforcement, administrative, or regulatory authorities.

28

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846, and conspiracy to engage in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1956(h).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

3.   Defendant further agrees:

1          a.    Truthfully to disclose to law enforcement officials,

2    at a date and time to be set by the USAO, the location of,

3    defendant's ownership interest in, and all other information known to

4    defendant about, all monies, properties, and/or assets of any kind,

5    involved in the commission of defendant's illegal activities, and any

6    property traceable to such property, or derived from or acquired as a

7    result of, defendant's illegal activities, and to forfeit all right,

8    title, and interest in and to all such items (the "Forfeitable

9    Property").

10          b.    That the Forfeitable Property includes, but is not

11   limited to:

12          i.    The real property located in Studio City,

13   California with Assessor's Parcel Number: 2380-015-018 and title is

14   held in the name of Iren Markosyan, a single woman (the "Studio City

15   property").   The Studio City property is situated in the County of

16   Los Angeles, State of California, and is more particularly described

17   as:

18   > Lot 362 of Tract 25056, in the City of Los Angeles, County of
     > Los Angeles, State of California, as per Map recorded in Book
19   > 666 Pages 10 to 20 inclusive of Maps, in the Office of the
     > County Recorder of said County.
20

21   > Except therefrom all oil, gas, minerals and other hydrocarbon
     > substances, lying and below a depth of 500 feet, without the
22   > right of surface entry.

23          ii.   One 1996 Carver 38 vessel with Vessel Number:

24   1053407 and Hull Identification Number: CDRR6038E696; and

25          iii.  One 2005 Caribe vessel with Vessel VIN:

26   EMDD2062I405.

27          c.    To take whatever steps are necessary to pass to the

28   United States clear title to the Forfeitable Property, including,

without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d. Not to contest any administrative forfeiture proceedings, civil judicial proceedings, or criminal proceedings commenced against the Forfeitable Property pursuant to any relevant statutes. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

e. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property described above.

f. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g. To prevent the transfer, sale, destruction, or loss of any and all Forfeitable Property to the extent defendant has the ability to do so.

h. To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That the forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

### THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Not seek a sentence of imprisonment above the high end of, and make no recommendation as to the point within the applicable Sentencing Guidelines range at which a term of imprisonment should be selected, provided that the offense level used by the Court to determine that range is 31 or higher and provided that the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

e.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C.

1   § 371), not further criminally prosecute defendant for violations of

2   18 U.S.C. §§ 1349, 1341, 1343 (wire fraud, mail fraud, and conspiracy

3   to commit he same) and 18 U.S.C. § 1029 (fraud and related activity

4   in connection with access devices) arising out of defendant's conduct

5   described in the agreed-to factual basis set forth in paragraph 17

6   below.  Defendant understands that the USAO is free to criminally

7   prosecute defendant for any other unlawful past conduct or any

8   unlawful conduct that occurs after the date of this agreement.

9   Defendant agrees that at the time of sentencing the Court may

10  consider the uncharged conduct in determining the applicable

11  Sentencing Guidelines range, the propriety and extent of any

12  departure from that range, and the sentence to be imposed after

13  consideration of the Sentencing Guidelines and all other relevant

14  factors under 18 U.S.C. § 3553(a).

15                         NATURE OF THE OFFENSES

16      5.   Defendant understands that for defendant to be guilty of

17  the crime charged in count one, that is, conspiracy to distribute

18  cocaine, in violation of 21.U.S.C. §§ 846, 841(a)(1),

19  841(b)(1)(A)(ii), the following must be true:   (1) there was an

20  agreement between two or more persons to distribute cocaine; and (2)

21  defendant joined in the agreement knowing of its purpose and

22  intending to help accomplish that purpose.

23      6.   Defendant understands that for defendant to be subject to

24  the statutory maximum and statutory minimum sentence set forth below,

25  the government must prove beyond a reasonable doubt that defendant

26  distributed, or conspired to distribute, at least five kilograms of a

27  mixture or substance containing a detectable amount of cocaine.

28  Defendant admits that he in fact conspired to distribute, and

                                     6

distributed, at least five kilograms of a mixture or substance containing a detectable amount of cocaine.

7.    Defendant understands that for defendant to be guilty of the crime charged in count two, that is, conspiracy to engage in money laundering, in violation of Title 18, United States Code, Section 1956(h), the following must be true:   (1) there was an agreement between two or more persons to commit the crime of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), that is, to (a) conduct or attempt to conduct a financial transaction, (b) knowing that the property involved in such a financial transaction represents the proceeds of some form of unlawful activity, (c) which in fact involves the proceeds of specified unlawful activity, and (d) knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; and (2) defendant willfully joined in the agreement knowing of its unlawful purpose.

8.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant distributed, or conspired to distribute, at least five kilograms of a mixture or substance containing a detectable amount of cocaine.   Defendant admits that he in fact, conspired to distribute at least five kilograms of a mixture or substance containing a detectable amount of cocaine.

PENALTIES

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846,

7

841(a)(1), 841(b)(1)(A)(ii), is:  a lifetime term of imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.  Defendant understands that the statutory maximum sentence that the Court can impose for count two, a violation of Title 18, United States Code, Section 1956(h), is:  20 years' imprisonment; 3 years of supervised release; $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: a lifetime term of imprisonment; a lifetime period of supervised release; a fine of $10,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

12.  Defendant understands that, absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Sections 846, 841(a), (b)(1)(A)(ii) is: 10 years' imprisonment, followed by a lifetime term of supervised release, and a mandatory special assessment of $100.

13.  Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or

assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

14. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

15. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

16. Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant

1  fully regarding the immigration consequences of the felony conviction
2  in this case.  Defendant understands that unexpected immigration
3  consequences will not serve as grounds to withdraw defendant's guilty
4  plea.

FACTUAL BASIS

6      17.  Defendant admits that defendant is, in fact, guilty of the
7  offenses to which defendant is agreeing to plead guilty.  Defendant
8  and the USAO agree to the statement of facts provided below and agree
9  that this statement of facts is sufficient to support pleas of guilty
10 to the charges described in this agreement and to establish the
11 Sentencing Guidelines factors set forth in paragraph 19 below but is
12 not meant to be a complete recitation of all facts relevant to the
13 underlying criminal conduct or all facts known to either party that
14 relate to that conduct.

15 Conspiracy to Distribute Cocaine

16     Beginning on a date unknown, at least as early as in or around
17 December 2014, and through at least in or around October 2016,
18 defendant VARDGES MARKOSYAN, also known as ("aka") "Oncho," aka
19 "David Petrosov," aka "Giani Oncho," aka "Laram Narman" ("defendant")
20 conspired with others to distribute at least five kilograms of a
21 mixture and substance containing a detectable amount of cocaine.  The
22 conspiracy proceeded generally as follows:

23   • Defendant would obtain cocaine from co-conspirators.

24   • Defendant would obtain empty household products.

25   • Defendant would conduct "test runs" of drug shipment methods by
26     sending packages of household products, by commercial carrier,
27     to Australia to evaluate whether drugs could be shipped without
28     detection inside similar packages.

10

- Defendant would conceal cocaine, suspended in grease, in household products and mail them via commercial carrier to Australia.

In furtherance of the conspiracy of which defendant was a part, the following packages of cocaine were distributed to Australia, from the Central District of California:

- On March 2, 2015, co-conspirator #1 sent 9.87 kilograms of a mixture and substance containing a detectable amount of cocaine hidden in a log splitter to Australia, sent by FedEx. In advance of this package, defendant had sent a "test run" for this package to Australia.

- On June 29, 2015, co-conspirator #2 sent 16.89 kilograms of a mixture and substance containing a detectable amount of cocaine hidden in an air compressor to Australia, sent by FedEx. In advance of this package, defendant had sent a "test run" for this package to Australia.

- On July 25, 2016, defendant sent 4.2 kilograms of a mixture and substance containing a detectable amount of cocaine hidden in tankless water heaters to Australia, sent by FedEx.

- On August 12, 2016, co-conspirator #3 sent 3.95 kilograms of a mixture and substance containing a detectable amount of cocaine hidden in a lampstand to Australia, sent by FedEx. Defendant had packaged the cocaine in this package.

- On October 13, 2016, co conspirator #4 sent 2.953 kilograms of a mixture and substance containing a detectable amount of cocaine hidden in an air conditioner to Australia, sent by DHL. Defendant assisted with the shipment of this package.

1

2   Conspiracy to Launder Money

3        Beginning on a date unknown, at least as early as in or around

4   May 2014, and through at least in or around January 2019, defendant

5   conspired with co-conspirator #5 (his sister, Iren Markosyan) to

6   launder criminal proceeds, which defendant and co-conspirator #5 knew

7   were the proceeds of unlawful criminal activity.   The conspiracy

8   proceeded as follows:

9     • Defendant and co-conspirator #5 would funnel money, including

10         proceeds from narcotics-related and fraud-related activities,

11         into accounts held in the name of co-conspirator #5.

12    • Defendant would use co-conspirator #5's name, with co-

13         conspirator #5's knowledge, to purchase real property.

14    • Defendant and co-conspirator #5 would obtain hard-money loans,

15         secured against the real property that had been purchased under

16         co-conspirator #5's name.

17    • Co-conspirator #5 would knowingly make and/or affirm false,

18         material misrepresentations in the applications for the loans.

19    • Co-conspirator #5 would direct the escrow companies for the

20         loans to transfer the proceeds of the loans to an account held

21         in the name of co-conspirator #5.

22    • Defendant would direct co-conspirator #5 to transfer the

23         proceeds of the loans to accounts that both defendant and co-

24         conspirator #5 controlled or defendant would instruct co-

25         conspirator #5 pay, with loan proceeds, entities directly.

26        Defendant used the name and bank accounts (to include escrow

27   accounts for loans) of co-conspirator #5 to purchase a property in

28   North Hollywood, California (the "North Hollywood Property") and in

Studio City, California (The "Studio City Property"). The funds used to purchase both of these homes were proceeds from separate unlawful activity, that is, either from drug trafficking in violation of federal law (which defendant knew) or from fraud and related activity in connection with access devices (in violation of 18 U.S.C. § 1029).

Between November 2015 and November 2018, co-conspirator #5 obtained multiple loans from hard-money lenders, solely in her name, secured against the North Hollywood Property and the Studio City Property. The net proceeds for each loan were transferred, at the direction of co-conspirator #5, to an account held solely in the name of co-conspirator #5 (the "3339 Account"). Thereafter, co-conspirator #5 would withdraw these funds and/or transfer these funds for the benefit of defendant. The purpose of these withdrawals and transfers were to conceal the nature of the funds and defendant's involvement in these funds. The following amounts were net proceeds from the loans obtained against the North Hollywood Property and Studio City Property, which were transferred to the 3339 Account:

| Approximate Date | Amount |
|---|---|
| November 27, 2015 | $125,354.60 |
| December 2, 2015 | $74,949.18 |
| January 4, 2016 | $188,180.53 |
| March 24, 2016 | $202,786.11 |
| May 6, 2016 | $196,749 |
| February 6, 2017 | $160,637.18 |
| July 10, 2017 | $137,819.79 |
| October 4, 2017 | $116,259.28 |
| February 14, 2018 | $164,598.93 |

On or about December 19, 2018, defendant sold the North Hollywood Property.  Defendant received $234,442.13 from the escrow company in connection with the sale of the North Hollywood Property. These funds were later withdrawn and/or transferred for the benefit of defendant.

In total, defendant conspired with co-conspirator #5 to launder between $1.5 million and $3.5 million in the manner described above.

SENTENCING FACTORS

18.   Defendant understands that in determining defendant's sentence, the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

19.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**COUNT ONE**

Base Offense Level:      32          [U.S.S.G. § 2D1.1(a),(c)]

**COUNT TWO**[1]

| | | |
|---|---|---|
| Base Offense Level: | 24 | [U.S.S.G. §§ 2S1.1(a)(2), |
| | | 2B1.1(b)(1)(I)] |
| Knowledge of Unlawful | +6 | [U.S.S.G. §§ 2S1.1(b)(1)] |
| Proceeds | | |
| Section 1956 | +2 | [U.S.S.G. §§ 2S1.1(b)(1)(2)(B)] |
| Sophisticated | +2 | [U.S.S.G. §§ 2S1.1(b)(3)] |
| Laundering | | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3.c. are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 33 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set

---

[1] The parties agree, under U.S.S.G. § 3D1.4 that both counts involve substantially the same harm, and should be grouped together; because count two has the higher offense level, the guidelines for that count should control.

1  forth in that section and to argue that defendant is not entitled to

2  a downward adjustment for acceptance of responsibility under U.S.S.G.

3  § 3E1.1.

4      20.  Defendant and the USAO agree that:

5          a.   Defendant did not use violence or credible threats of

6  violence or possess a firearm or other dangerous weapon (or induce

7  another participant to do so) in connection with the offense charged

8  in count one;

9          b.   The offense charged in count one did not result in

10  death or serious bodily injury to any person; and

11         c.   Defendant was not an organizer, leader, manager, or

12  supervisor of others in the offense charged in count one and was not

13  engaged in a continuing criminal enterprise.

14     21.  Defendant understands that there is no agreement as to

15  defendant's criminal history or criminal history category.

16     22.  Defendant and the USAO reserve the right to argue for a

17  sentence outside the sentencing range established by the Sentencing

18  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

19  (a)(2), (a)(3), (a)(6), and (a)(7).

20                    WAIVER OF CONSTITUTIONAL RIGHTS

21     23.  Defendant understands that by pleading guilty, defendant

22  gives up the following rights:

23         a.   The right to persist in a plea of not guilty.

24         b.   The right to a speedy and public trial by jury.

25         c.   The right to be represented by counsel -- and if

26  necessary have the court appoint counsel -- at trial.  Defendant

27  understands, however, that, defendant retains the right to be

28

1  represented by counsel -- and if necessary have the court appoint

2  counsel -- at every other stage of the proceeding.

3          d.    The right to be presumed innocent and to have the

4  burden of proof placed on the government to prove defendant guilty

5  beyond a reasonable doubt.

6          e.    The right to confront and cross-examine witnesses

7  against defendant.

8          f.    The right to testify and to present evidence in

9  opposition to the charges, including the right to compel the

10 attendance of witnesses to testify.

11         g.    The right not to be compelled to testify, and, if

12 defendant chose not to testify or present evidence, to have that

13 choice not be used against defendant.

14         h.    Any and all rights to pursue any affirmative defenses,

15 Fourth Amendment or Fifth Amendment claims, and other pretrial

16 motions that have been filed or could be filed.

17                    WAIVER OF RETURN OF DIGITAL DATA

18    24.   Understanding that the government has in its possession

19 digital devices and/or digital media seized from defendant, defendant

20 waives any right to the return of digital data contained on those

21 digital devices and/or digital media and agrees that if any of these

22 digital devices and/or digital media are returned to defendant, the

23 government may delete all digital data from those digital devices

24 and/or digital media before they are returned to defendant.

25                    WAIVER OF APPEAL OF CONVICTIONS

26    25.   Defendant understands that, with the exception of an appeal

27 based on a claim that defendant's guilty pleas were involuntary, by

28 pleading guilty defendant is waiving and giving up any right to

17

appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 135 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, with the exception that defendant reserves the right, on appeal from the sentence, to seek review of any determination that defendant did not satisfy any of the factors listed in paragraph ¶ 20; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318 and 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of

imprisonment of no less than 108 months, the USAO gives up its right to appeal any portion of the sentence.

## WAIVER OF COLLATERAL ATTACK

28. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

29. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

19

certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered guilty pleas pursuant to this agreement, defendant will not
be able to withdraw the guilty pleas, and (b) the USAO will be
relieved of all its obligations under this agreement.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

### OFFICE NOT PARTIES

32.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

33.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 19 are

1  consistent with the facts of this case.  While this paragraph permits
2  both the USAO and defendant to submit full and complete factual
3  information to the United States Probation and Pretrial Services
4  Office and the Court, even if that factual information may be viewed
5  as inconsistent with the facts agreed to in this agreement, this
6  paragraph does not affect defendant's and the USAO's obligations not
7  to contest the facts agreed to in this agreement.

8      34.  Defendant understands that even if the Court ignores any
9  sentencing recommendation, finds facts or reaches conclusions
10  different from those agreed to, and/or imposes any sentence up to the
11  maximum established by statute, defendant cannot, for that reason,
12  withdraw defendant's guilty pleas, and defendant will remain bound to
13  fulfill all defendant's obligations under this agreement.  Defendant
14  understands that no one -- not the prosecutor, defendant's attorney,
15  or the Court -- can make a binding prediction or promise regarding
16  the sentence defendant will receive, except that it will be within
17  the statutory maximum.

18                        NO ADDITIONAL AGREEMENTS

19      35.  Defendant understands that, except as set forth herein or
20  pursuant to the letter agreement previously entered into by the
21  parties dated January 15, 2019, there are no promises,
22  understandings, or agreements between the USAO and defendant or
23  defendant's attorney, and that no additional promise, understanding,
24  or agreement may be entered into unless in a writing signed by all
25  parties or on the record in court.

26
27
28

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

36.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          9/12/2019
PUNEET V. KAKKAR                            Date
Assistant United States Attorney

_____          08/23/19
VARDGES MARKOSYAN                           Date
Defendant

_____          8/23/19
MICHAEL BROWN, ESQ.                         Date
Attorney for Defendant VARDGES
MARKOSYAN


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or

22

representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     08/23/19
VARDGES MARKOSYAN                      Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am VARDGES MARKOSYAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

9/6/19

_____          _____
MICHAEL BROWN, ESQ.                       Date
Attorney for Defendant VARDGES
MARKOSYAN

24

# Exhibit A

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 19-

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [21 U.S.C. § 846: Conspiracy to
                                        Distribute Cocaine; 18 U.S.C.
13   VARDGES MARKOSYAN,                 § 1956: Conspiracy to Launder
       aka "Oncho,"                     Monetary Instruments; 21 U.S.C.
14     aka "David Petrosov,"            § 853, 18 U.S.C. § 982, 28 U.S.C.
       aka "Giani Oncho,"               § 2461(c): Criminal Forfeiture]
15     aka "Laram Narman,"

16              Defendant.

17

18        The United States Attorney charges:

19                         COUNT ONE

20                   [21 U.S.C. § 846]

21   A.   OBJECT OF THE CONSPIRACY

22        Beginning on a date unknown and continuing until at least in or

23   around December 2014, in Los Angeles County, within the Central

24   District of California, defendant VARDGES MARKOSYAN, also known as

25   ("aka") "Oncho," aka "David Petrosov," aka "Giani Oncho," aka "Laram

26   Narman," and others known and unknown to the United States Attorney,

27   conspired and agreed with each other to knowingly and intentionally

28   distribute at least five kilograms of a mixture and substance

containing a detectable amount of cocaine, a Schedule II narcotic
drug controlled substance, in violation of Title 21, United States
Code, Sections 841(a)(1), (b)(1)(A)(ii).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     The object of the conspiracy was to be accomplished, in
substance, as follows:

    1.   Defendant would obtain cocaine from co-conspirators.

    2.   Defendant would obtain empty household products.

    3.   Defendant would conduct "test runs" of drug shipment
     methods by sending packages of household products, by
     commercial carrier, to Australia to evaluate whether drugs
     could be shipped without detection inside similar packages.

    4.   Defendant would conceal cocaine, suspended in grease, in
     household products and mail them via commercial carrier to
     Australia.

C.   OVERT ACTS

     In furtherance of the conspiracy and to accomplish the object of
the conspiracy, on or about the following date, defendant, and others
known and unknown to the United States Attorney, committed various
overt acts in Los Angeles County, within the Central District of
California, and elsewhere, including, but not limited to, the
following:

    1.   On July 25, 2016, defendant sent 4.2 kilograms of a mixture
     and substance containing a detectable amount of cocaine
     hidden in tankless water heaters to Australia, sent by
     FedEx.

COUNT TWO

[18 U.S.C. § 1956(h)]

Beginning on an unknown date and continuing until on or about February 3, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant VARDGES MARKOSYAN, also known as ("aka") "Oncho," aka "David Petrosov," aka "Giani Oncho," aka "Laram Narman," and others known and unknown to the United States Attorney, conspired with each other to knowingly conduct financial transactions knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which, in fact, involved the proceeds of specific unlawful activity, namely, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and fraud and related activity in connection with access devices, in violation of Title 18, United States Code, Section 1029, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

D. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendant and co-conspirator #1 would funnel money, including proceeds from narcotics-related and fraud-related activities, into accounts held in the name of co-conspirator #1.

2. Defendant would use co-conspirator #1's name to purchase real property.

3

3.    Defendant and co-conspirator #1 would obtain hard-money loans, secured against the real property that had been purchased under co-conspirator #1's name.

4.    Co-conspirator #1 would knowingly make and/or affirm false, material misrepresentations in the applications for the loans.

5.    Co-conspirator #1 would direct the escrow companies for the loans to transfer the proceeds of the loans to an account held in the name of co-conspirator #1.

6.    Defendant would direct co-conspirator #1 to transfer the proceeds of the loans to accounts that both defendant and coconspirator #1 controlled, or defendant would instruct co-conspirator #1 to pay, with loan proceeds, entities directly.

E.    OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following date, defendant, and others known and unknown to the United States Attorney, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.    On October 4, 2017, co-conspirator #1 received in a Wells Fargo Bank Account ending in 3339 (the "3339 Account") $116,259.28, proceeds from a refinance loan against real property in Studio City.

2.    On October 5, 2017, co-conspirator #1 transferred from the 3339 Account $111,652 to another account at Wells Fargo Bank ending in 6927 (the "6927 Account").

3.    On October 6, 2017, defendant V. MARKOSYAN withdrew $20,000 from the 6927 Account.

1          4.    On October 10, 2017, defendant V. MARKOSYAN withdrew

2    $13,000 from the 6927 Account.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in Count One of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense including, without limitation, the following property (the "Forfeitable Property"):

i. The real property located in Studio City, California with Assessor's Parcel Number: 2380-015-018 and title is held in the name of Iren Markosyan, a single woman (the "Studio City property"). The Studio City property is situated in the County of Los Angeles, State of California, and is more particularly described as:

> Lot 362 of Tract 25056, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 666 Pages 10 to 20 inclusive of Maps, in the Office of the County Recorder of said County.
>
> Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying and below a depth of 500 feet, without the right of surface entry.

ii. One 1996 Carver 38 vessel with Vessel Number: 1053407 and Hull Identification Number: CDRR6038E696; and

6

iii. One 2005 Caribe vessel with Vessel VIN: EMDD2062I405.

(b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of the offenses set forth in Count Two of this Information.

2. Defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, involved in such offense, and any property traceable to such property, including, without limitation, the following property (the "Forfeitable Property"):

i. The real property located in Studio City, California with Assessor's Parcel Number: 2380-015-018 and title is held in the name of Iren Markosyan, a single woman (the "Studio City property"). The Studio City property is situated in the County of Los Angeles, State of California, and is more particularly described as:

> Lot 362 of Tract 25056, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 666 Pages 10 to 20 inclusive of Maps, in the Office of the County Recorder of said County.

> Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying and below a depth of 500 feet, without the right of surface entry.

ii. One 1996 Carver 38 vessel with Vessel Number: 1053407 and Hull Identification Number: CDRR6038E696; and

8

1          iii. One 2005 Caribe vessel with Vessel VIN:

2    EMDD2062I405.

3          (b)   To the extent such property is not available for

4    forfeiture, a sum of money equal to the total value of the property

5    described in subparagraph (a).

6     3.    Pursuant to Title 21, United States Code, Section 853(p),

7    as incorporated by Title 18, United States Code, Section 982(b)(1),

8    and Title 18, United States Code, Section 982(b)(2), defendant, if so

9    convicted, shall forfeit substitute property, if, by any act or

10   omission of the defendant, the property described in the preceding

11   paragraph, or any portion thereof: (a) cannot be located upon the

12   exercise of due diligence; (b) has been transferred, sold to, or

13   deposited with a third party; (c) has been placed beyond the

14   jurisdiction of the court; (d) has been substantially diminished in

15   value; or (e) has been commingled with other property that cannot be

16   divided without difficulty. Substitution of assets shall not be

17   ordered, however, where the convicted defendant acted merely as an

18   intermediary who handled but did not retain the property in the

19   course of the money laundering offense unless defendant, in

20   ///

21   ///

22

23

24

25

26

27

28

9

1  committing the offense or offenses giving rise to the forfeiture,

2  conducted three or more separate transactions involving a total of

3  $100,000.00 or more in any twelve-month period.

4                                  NICOLA T. HANNA
                                    United States Attorney
5

6

7                                  BRANDON D. FOX
                                    Assistant United States Attorney
8                                  Chief, Criminal Division

9                                  CAROL A. CHEN
                                    Assistant United States Attorney
10                                 Chief, International Narcotics,
                                      Money Laundering, and
11                                    Racketeering Section

12                                 PUNEET V. KAKKAR
                                    Assistant United States Attorney
13                                 Deputy Chief, International
                                      Narcotics, Money Laundering, and
14                                    Racketeering Section

15

16

17

18

19

20

21

22

23

24

25

26

27

28